UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> JOHN GERINGER, <br> Defendant. | Case No. 5:12-cr-00888-EJD <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR BAIL PENDING APPEAL** <br><br> Re: Dkt. No. 235 |

### I.   INTRODUCTION

On June 4, 2014, Defendant John Geringer ("Defendant") pled guilty pursuant to a written plea agreement to one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349, one count of mail fraud in violation of 18 U.S.C. § 1341, and one count of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5, and 240.10b5-2. Dkt. Nos. 81, 82. Defendant was thereafter sentenced to a custodial term of 145 months and three years of supervised release, and the court calculated the loss to the victims, all of whom were investors in the GLR Growth Fund (the "Fund"), as $50,327,484.04. A Judgment was entered accordingly on June 26, 2015, which was later amended on July 20, 2015. Dkt. Nos. 173, 187. Defendant has appealed from the judgment. Dkt. No. 180.

Presently before the court is Defendant's motion for bail pending appeal. Dkt. No. 235. The Government has filed written opposition to the motion. Dkt. No. 239. Having carefully considered the pleadings filed by the parties along with the relevant record, the court has determined that Defendant failed to identify a requisite "substantial question" according to the standard that applies to requests for bail during an appeal. On that basis, Defendant's motion will

be denied for the reasons explained below.

## II.   LEGAL STANDARD

Under 18 U.S.C. § 3143(b), "a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, [must] be detained . . . ." However, the court may permit an exception to § 3143(b)'s mandate and grant bail pending appeal if it finds: "(1) that the defendant is not likely to flee or pose a danger to the safety of any other person in the community if released; (2) that the appeal is not for purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed" (United States v. Handy, 761 F.2d 1279, 1283 (9th Cir. 1985)), or "a sentence that does not include a term of imprisonment" or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b).

The party moving for bail on appeal must establish all of the requisite elements. See United States v. Montoya, 908 F.2d 450, 451 (9th Cir. 1990).

## III.   DISCUSSION

Although the parties each address Defendant's motivation for appealing his sentence under the second element of Handy, the court will discuss the "substantial question" elements because doing so proves dispositive. "[A] 'substantial question' is one that is 'fairly debatable,' or 'fairly doubtful' . . . ." Handy, 761 F.2d at 1283 (internal citations omitted). "In short, a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous." Id. (quoting United States v. Giancola, 754 F.2d 898, 901 (11th Cir. 1985)).

Focusing primarily on the loss amount used to calculate his sentence, Defendant argues he has raised substantial questions which, if successful, are likely to result in a sentence significantly shorter than the expected duration of the appeal process. First, relying on a rule expressed in United States v. West Coast Aluminum Heat Treating Co., 256 F.3d 986, 992 (9th Cir. 2001)

("West Coast Aluminum"), which provides "that the victim's loss should be offset by the victim's benefit," Defendant argues he is entitled to a loss offset of approximately $49,682,655 for the value of the Fund, which at the time of sentencing only had an investment in a private company, DDNI.

Second, Defendant argues his offense did not "cause" certain losses attributed to him. Specifically, Defendant believes that some loss - $7 million by his analysis - should have been attributed to market forces rather than to his offense conduct. Additionally, Defendant contends he should not be held accountable for $26.4 million in alleged private investment loss because the Fund's limited partners agreed that 25% of their contributions would be direct company investments as opposed to stock market investments.

In opposition, the Government disagrees that Defendant has raised a "substantial question" on appeal. The Government argues the court correctly determined Defendant was not entitled to an offset for the value of the Fund because its illiquid and potentially worthless investment in DDNI was not returned to the victims before discovery of the offense conduct. Consequently, the Government contends that any loss offset for the value of the Fund is foreclosed by U.S.S.G. § 2B1.1, Note 3(E)(i), which only permits an offset for "money returned and the fair market value of the property returned and the services rendered by the defendant or other persons acting jointly with the defendant, to the victim[s] before the offense was detected."

As to Defendant's other arguments, the Government points out that Defendant did not raise objections at sentencing based on losses attributable to market forces or to the limited partners' agreement to private investments. For this reason, the Government contends the Ninth Circuit must review Defendant's sentence for plain error. United States v. Randall, 162 F.3d 557, 561 (9th Cir. 1998) ("Alleged sentencing errors are reviewed for plain error where the defendant has failed to object before the district court and therefore forfeited his right to appeal."). But even if these arguments are taken on their merits, the Government does not agree that any loss deductions based on their premise would result in a revised guideline calculation correlating to a significantly reduced sentence. In the Government's estimation, Defendant would face a sentencing range of

3
Case No.: 5:12-cr-00888-EJD
ORDER DENYING DEFENDANT'S MOTION FOR BAIL PENDING APPEAL

97 to 121 months even if $33.4 million is deducted from the loss amount of $50,327,484.04.

Putting aside the comprehensive waiver in Defendant's plea agreement and plea colloquy for the purposes of this motion, Defendant has not satisfied his burden to identify a "substantial question" with the arguments raised in this motion. See Handy, 761 F.2d at 1283. On the issue of offset for the value of the Fund, it is undisputed that Defendant did not return anything to the victims before his fraud was detected. In fact, a statement from Defendant's reply highlights that, rather than arguing on appeal that he gave something back to the victims, he merely contends "the limited partners have always owned a share of the Fund's value commensurate with their respective contributions." Such a statement is inconsistent with the plain language of U.S.S.G. § 2B1.1, Note 3(E)(i), which allows for offset only when money or property of value is returned by a defendant.

Moreover, this case is distinguishable from the primary authority relied upon by Defendant in support of his offset argument. In West Coast Aluminum, the defendant pled guilty to six counts of making false statements and one count of conspiracy to do so after it was discovered that the defendant failed to observe the treatment and testing standards for alloy parts required by its contracts with the Government. 256 F.3d at 988-89. At sentencing, the district court calculated the Government's loss based on the net profit to defendant, but discounted the figure by 25% "because some of the government contracts may have only needed to meet a lower [treatment and testing] standard." Id. at 989. The Ninth Circuit affirmed the loss calculation, noting that it "remained consistent with the rule that the victim's loss should be offset by the victim's benefit." Id. at 992.

If anything, West Coast Aluminum teaches that in fraud cases involving several contracts with differing provisions, a loss calculation should properly account for the value of a partial performance. In that case, there was no dispute that some of the parts subjected to lower treatment and testing standards satisfied at least a portion of the defendant's contracts. The Government, therefore, had received the benefit of its bargain, or the "value" of those contracts, when the fraud was discovered.

4
Case No.: 5:12-cr-00888-EJD
ORDER DENYING DEFENDANT'S MOTION FOR BAIL PENDING APPEAL

Here, in contrast to West Coast Aluminum, the record does not support Defendant's contention that the victims actually received anything of value or at all benefitted from the Fund's investment in DDNI, either at the time Defendant's offense conduct was discovered in 2012 or when Defendant was sentenced in 2015.  Indeed, a review of transcript from co-defendant Christopher Luck's sentencing hearing - during which the issue of an offset for the value of the Fund was discussed extensively - reveals that the court declined to order the offset because the evidence presented was insufficient to "accept any real valuation of DDNI."  Dkt. No. 136, at 93:23-95:22.  The court explained that while DDNI might offer some real value at an unknown time in the future as either a viable business or through its sale to another company, those possibilities amounted to "nothing more than an expectation at best."  Id.

For analogous reasons, the court subsequently rejected Defendant's request, made at his own sentencing hearing, to offset the total loss amount by the value placed on the Fund by the tax accountant appointed in a related civil action.  Again, while the Fund was valued at $49,682.655 for the purpose of filing tax returns, the record did not show that this calculation could be translated into a fair market value or converted into an actual benefit to the victims.  This conclusion is consistent with the directive that, in calculating loss, "courts are to attempt to determine 'value'" and "need only make a reasonable estimate of the loss, given the available information."  United States v. Harper, 32 F.3d 1387, 1389-92 (9th Cir. 1994) ("Harper").  Based on the information available at Defendant's sentencing, DDNI could not be valued.

The other cases cited by Defendant do not compel some other conclusion.  With regard to the "pump and dump" cases of United States v. Zolp, 479 F.3d 715 (9th Cir. 2007), and United States v. Leonard, 529 F.3d 83 (2d Cir. 2008), it is important to recognize that the victims, who in those cases were the purchasers of inflated securities, were not misled concerning the object of their investments, and both involved securities in legitimate companies that maintained some residual value even after the defendants' fraudulent activities were uncovered.  These cases present a distinct factual scenario that cannot be neatly applied to the circumstances presented by this case, particularly when the record shows that the Fund's investors were misled into believing

5
Case No.: 5:12-cr-00888-EJD
ORDER DENYING DEFENDANT'S MOTION FOR BAIL PENDING APPEAL

their investment would be diversified, not placed into one investment with a private company.

In <u>United States v. Crandall</u>, 525 F.3d 907 (9th Cir. 2008), the Ninth Circuit found that an offset was appropriate because the fraudulent "condominiums" sold to victims had value, even though the units were difficult or impossible to resell.  Similarly, the Ninth Circuit held in <u>United States v. Silver</u>, 245 F.3d 1075 (9th Cir. 2001), that an offset should be applied because generic products sold to the Department of Defense had some value, even though they did not satisfy the contract the Department had with the defendant.  And in <u>United States v. Martin</u>, 796 F.3d 1101 (9th Cir. 2015), the Ninth Circuit determined the defendant should receive an offset because the Government received significant value from its contracts with the defendant, even though she provided untruthful information to obtain those contracts.  Observations equivalent to the ones made in <u>Crandall</u>, <u>Silver</u> and <u>Martin</u> concerning the value of the Fund cannot be made in this case given the absence of evidence to support such a finding.

Furthermore, Defendant's reliance on <u>Harper</u> is misplaced.  In that case, the defendant compelled owners of overencumbered properties to give over their homes on the promise they would be relieved of their mortgage obligations.  But in reality, the defendant merely leased the homes to other tenants, collecting rents until the lender foreclosed on the original mortgage loan. The Ninth Circuit opined on the record before it that the Government had not proven any loss to the victims; "[t]he owner-victims knew that the cash value of what they had, at least as far as they were concerned, was little or nothing" because the homes were worth less than the mortgage loans, and "the renter-victims cannot be said to have lost all of the rental money they paid" because they did, in fact, get to live in the properties they leased from the defendant.  32 F.3d at 1392.  The discussion of loss offset in that case is properly limited to its unique facts.

Finally, <u>United States v. Morris</u>, 744 F.3d 1373 (9th Cir. 2014), is inapposite because it involved application of Guideline provisions that "explicitly dictate how to measure loss in mortgage fraud cases that involve collateral." 744 F.3d at 1375.  That provision does not apply here.

Thus, because the record did not show that the victims received something of value from

6

Case No.: 5:12-cr-00888-EJD
ORDER DENYING DEFENDANT'S MOTION FOR BAIL PENDING APPEAL

the Fund's investment in DDNI, whether Defendant should have received an offset for the value of the Fund is not "fairly debatable" such that he is entitled to bail pending appeal.

The same can be said of Defendant's other arguments.  Since the Government appears to be correct that those purported errors will be addressed by the Ninth Circuit under a plain error review, they are not "fairly debatable."  In any event, even if Defendant succeeds on the theories that either market forces or the limited partners' agreement to private investments are reasons to modify his sentence, the Government has convincingly shown that the guideline sentencing range applicable to such a scenario would be 97 to 121 months.  Accordingly, any revised term of imprisonment would not be less than "the total of the time already served plus the expected duration of the appeal process."

## IV.   ORDER

The motion for bail pending appeal (Dkt. No. 235) is DENIED.

**IT IS SO ORDERED.**

Dated:  September 14, 2016



EDWARD J. DAVILA
United States District Judge

7
Case No.: 5:12-cr-00888-EJD
ORDER DENYING DEFENDANT'S MOTION FOR BAIL PENDING APPEAL