Matthew J. Jacobs (CA SBN 171149)
mjacobs@velaw.com
Francis M. Yang (CA SBN 313984)
fyang@velaw.com
VINSON & ELKINS LLP
555 Mission Street, Suite 2000
San Francisco, CA 94105
Telephone: +1.415.979.6900
Fax: +1.415.651.8786

Attorneys for Defendant
JOHN GERINGER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN GERINGER<br><br>Defendant. | Case No.: CR 12-00888-EJD<br><br>**DEFENDANT'S REPLY TO GOVERNMENT SENTENCING MEMORANDUM** |

Mr. Geringer respectfully submits this reply to the government's sentencing memorandum for the Court's consideration.

## I. The Government's Recommendation of a 145 Months Is Not Factually Supportable

There is no disagreement between the parties and the Probation Office about the appropriate Guideline level or applicable range.[1] *See* Defendant's Sentencing Memorandum, ECF No. 359 at 10; Government's Sentencing Memorandum, ECF No. 357 at 5–6. Based on the revised calculation to correct the error that was committed at the first sentencing of failing to determine the value of the GLR Growth Fund (the "Fund"), and to deduct that value from the loss calculation, the new Guideline range is 121 months to 151 months, or 30 months lower than the original range determined in the prior proceeding. Nor is there any disagreement over the facts of the case. Most importantly, those facts have not changed since the prior sentencing, and indeed the Ninth Circuit did not remand for the finding of additional facts related to the underlying crime. *See U.S. v. Geringer*, 672 Fed. Appx. 651 (9th Cir. 2016). Accordingly, the record remains the same as it was in June 2015 when the Court first sentenced Mr. Geringer, including the substantial assistance provided by Mr. Geringer that helped persuade the other defendants to plead guilty. Likewise, the Section 3553(a) factors that the Court considered almost four years ago are unchanged and nothing that has occurred on remand has altered the record before the Court in that regard.

It is thus astonishing that the government would ask the Court to impose exactly the same sentence as Mr. Geringer received when the Guidelines were incorrectly calculated and included a sentencing range that was 30 months higher than it is now. *See* ECF No. 357 at 6, 8. If one goes back to the original sentencing in 2015, long before instant counsel were involved, the government recommended a low end sentence of 151 months. *See* ECF No. 162 at 7. The Court, in a very

---

[1] Note that the probation office also agrees with the basic calculation but its total offense level calculation is 34 because the probation office does not include the motion for substantial assistance under §5K1.1. PSR ¶¶ 45–56.

thoughtful and well-reasoned colloquy, determined that there should be a six-month reduction off of the low-end Guideline recommendation. The government provides no analysis for why Mr. Geringer should receive exactly the same sentence as he did when the Guideline range was 30 months higher than it should have been—other than to repeat the same arguments it made in 2015 about harm to victims and Mr. Geringer's role in the offense. *See* ECF No. 357. In other words, the government would have the Court simply ignore the fact that the Guidelines dictate a level of punishment for the crime that is on balance 30 months less than when Mr. Geringer was sentenced by this Court to 145 months. That would be tantamount to saying that the proceedings of the last several months have been pointless and that the loss amount was and is irrelevant to Mr. Geringer's sentence. Yet that is not the case.

It might be different if the Guidelines had not been the predominant factor in determining the sentence imposed by the Court in 2015. But that is clearly not the case for Mr. Geringer or the other defendants. Indeed, the record makes clear that the Court very much based its sentence on the Guidelines, that it relied on and adopted the government's incorrect loss calculation in 2015, and then made a modest adjustment of six months off of that calculation based on its consideration of Section 3553(a) factors.

If the Court were to impose the same sentence as before, it would effectively punish Mr. Geringer for vindicating his constitutional right to appeal and to seek a sentence based on a legally correct interpretation of the Guidelines. The imposition of a 145 month sentence on Mr. Geringer, when his Guideline range is 30 months lower than before, would effectively and in practical terms be the same as imposing a higher sentence, and thus constitute a penal rebuke to Mr. Geringer for having appealed.

First, it is not Mr. Geringer's fault that this matter has returned after so many years. It was, of course, the government that urged the Court to adopt a loss figure that was legally incorrect, thus

elevating the sentencing range by 30 months in the first instance. *See* June 25, 2015, Hr'g Tr. at 92:21–94:3, 95:10–96:16 (government's argument against credit for the value of the Fund). It was the government that allowed the previous sentencing hearing to conclude without correcting the record regarding the appellate waiver. *U.S. v. Geringer*, 672 Fed. Appx. at 652 (holding that the government's failure to object revived Mr. Geringer's right to appeal). And it was the government that then urged the same faulty reading of the law to the Ninth Circuit, rather than simply stipulating that the original loss was incorrect, thus necessitating the appellate decision above and the instant remand.[2] *See* Brief for United States as Appellee at 22–36, *U.S. v. Geringer*, 672 Fed. Appx. 651 (9th Cir. 2016), ECF No. 29. We respectfully submit that to follow the government's recommendation here would, again, lead to both a legally flawed and unjust result.

Second, the Ninth Circuit was very narrow in its order on remand: the only issue identified was a recalculation of the loss based on the value of the Fund's assets. *See U.S. v. Geringer*, 672 Fed. Appx. at 652. This was a technical, narrow, factual question about the value of certain assets. Nothing about the remand order, or in the arguments above, suggested a need *or basis* to re-think the other factors that led the Court to determine a sentence which included a six-month departure from the low end of the Guidelines. *See id.* The clear import of the Ninth Circuit's decision is to simply readjust the sentence based on a correct rather than the incorrect loss calculation put forward by the Government.

Again, there is no factual basis for reconsidering the Section 3553(a) factors. The Court's discussion in 2015 was thoughtful and well considered:

[2] We would also note that the Government put forth an expert that, in the defense view, failed to uphold even the most basic standards of business valuation. As spelled out in more detail in the Defense's Sentencing Memorandum, it is the defense's belief that the Court erred in finding that Dr. Miller's report was credible or relying on her analysis in any manner for finding the value of DDNi. Indeed, the Court will remember that the government in the remand proceedings actually urged the Court to find that DDNi had no value whatsoever.

> I've read about your history, Mr. Geringer, and about your athletic prowess, going to Cal on a football scholarship is not something easily enterprised. And I read Mr. Dang's suggestion that perhaps football injuries somehow, although it perhaps wasn't appropriate to raise and certainly is not an excuse and your lawyer never made excuses, let me say that, he certainly offered sensible explanations for conduct as Mr. Dang noted. Perhaps there was something that happened that clouded your judgment in some way.
>
> You see, it's so easy in these cases to look, I think as we heard earlier, to look and say that these cases are motivated by greed and that's what they're about is greed, it's the pursuit of greed, and it's probably very easy for us to get to that point and say that's what it is all, and shrug and say that's what it is. But there's more to it than that.
>
> I think the evidence seems to indicate that you got in this fund with the best intentions and perhaps you got in over your head. Perhaps at some point in time you realized that your skill set just wasn't to the level of sophistication as you articulated and advertised in the Fund. And perhaps there was something some people call hubris that wouldn't allow you to basically go to these good people and say, you know, I can't do this, I'm over my head, and let me transfer these funds to somebody else.
>
> You tried to do it and it didn't work. And as I think your lawyer suggested, maybe what you tried to do is as we see all too often in these types of cases, well, you know, if I just get one more deal, if I just keep this going, I can make this right, I can do that.
>
> …
>
> But we know it was wrong. We know. And your client certainly knows it was wrong. He invested his money in it, and he had his family invest money in it and someone, a speaker today, suggested that that should be actually a circumstance in aggravation, i suppose, because it shows that he was willing to put his families' money at risk as well.
>
> But there's no evidence of that. We don't know if there's any scienter or knowledge.
>
> But making the statements that were made throughout this scheme, as i noticed before previously, it suggests a severe predatory comment. It preyed on the concerns that people had at this very, very volatile time.
>
> …
>
> I do think that considering the nature and circumstances of the offense and the history and characteristics of Mr. Geringer that a variance is appropriate here, it is appropriate for a variance here.
>
> The court does feel that a variance is appropriate in this particular case and considering the seriousness of the offense and also to promote respect for the law and to provide just punishment for the defendant and the need to afford deterrence and protect the public as well.

June 25, 2015 Hr'g Tr. at 119:13–124:10.

The Court's findings about Mr. Geringer's good intentions but misguided actions stand in contrast to the actions and motivations of Mr. Luck, to the extent that the government may argue

Mr. Geringer's sentence in relation to Mr. Luck.[3] First and foremost, there was no comparison in the Court's earlier sentencing as between Mr. Geringer and the other defendants. *See* June 25, 2015 Hr'g Tr. at 118:1–125:15. In other words, the Court did not say that it was sentencing Mr. Geringer to a higher sentence based on some comparative analysis of the conduct of each person. Rather, it is clear that the Court started with and was following the Guidelines and then made whatever adjustments based on Section 3553(a) factors from the low end.

It is improper for a court to be vindictive against a defendant, or to punish that defendant because they exercised their constitutional right to appeal. *U.S. v. Horob*, 735 F.3d 866, 869 (9th Cir. 2012 ("A district court violates a defendant's right to due process of law if on remand it increases the sentence on the remaining counts to penalize the defendant for exercising a protected statutory or constitutional right.") (citing *U.S. v. Goodwin*, 457 U.S. 368 (1982)).[4] While most cases have not found a *presumption* of vindictiveness when if the sentence after a successful appeal is not greater, the facts of this case appear to be unique. Because the Court has already considered the 3553(a) factors and because the government's original loss calculation caused Mr. Geringer's guideline range to be 30 months too high, there is no valid basis to impose the same sentence as before.

Second, and most importantly, there has been no showing that the Court's original loss calculations regarding the other defendants were incorrect, as they were with Mr. Geringer. The Court permitted those defendants to participate in the hearings on remand even though their habeas

[3] To the extent the government were to argue that Mr. Geringer deserves a higher sentence than Mr. Luck, who is now serving a 130-month sentence, it is worth noting that Mr. Geringer provided cooperation and substantial assistance to the government's investigation; voluntarily repaid his bonus unlike Mr. Luck, did not live an elaborate lifestyle like Mr. Luck who was funding his race-car driving habit; and invested his own and his family's money in the enterprise. PSR ¶¶ 7, 31-33, 38-39; ECF No. 357 at 8. Moreover, the revised loss calculations for DDNi and MediaTitle would not alter the loss calculations for Mr. Luck and Mr. Rode, as they do for Mr. Geringer, and thus there would be no basis to change their sentences in any event.

[4] Note that *Alabama v. Smith* partially overruled the presumption of vindictiveness with respect to defendants that are sentenced first under a guilty plea, and then resentenced after a trial. 490 U.S. 794, 801–03 (1989).

motions had not been granted. They withdrew when it became clear that, based on the Court's findings about the value of DDNi, and unlike Mr. Geringer, they would not have any basis to claim that their loss figures were too high. ECF Nos. 354, 356. Third, to the extent the record is consulted, it is clear that Mr. Luck was using the Fund and DDNi in particular to fuel an excessive lifestyle including the diversion of funds for race cars—monies that might have helped the investments be more successful. *See* PSR ¶¶ 38–39. And when Mr. Luck had the opportunity to pay back a $1.6 million bonus, he declined to do so—unlike Mr. Geringer and Mr. Rode. PSR ¶¶ 31–33. Mr. Geringer also provided substantial assistance to the government warranting a two-point reduction in his offense level for his role in the other defendant's pleas. ECF No. 357 at 8.

For the reasons stated above, the Court should not disturb its prior reasoning but simply correct the miscalculation regarding loss, and impose a sentence of 115 months based on a six month variance from the low end. This sentence is still an extremely significant one. A sentence of 10 years is, by any measure, extremely serious for any crime. As the Court is well aware, the Guidelines seriously increased white collar and fraud sentences and those sentences are almost entirely driven by the loss—which, again, was wrongly calculated here in the first instance. We respectfully submit that 115 months is a just and appropriate sentence, that it constitutes effective deterrence particularly for a first offender who went into this venture with good intentions, and that it satisfies society's need for punishment.

## II. The Government Inaccurately Calculated Restitution

The government asks the Court to rely on the original contribution/distribution method it used for calculating loss to calculate restitution. ECF No. 357 at 10. As an initial matter, the government acknowledges that its original calculation had an arithmetic error but fails to correct it here. *See* ECF No. 357 at 5. Its own restitution number should be $50,147,850.97.

This restitution figure is flawed because it fails to deduct the value the Fund as of the agreed-upon measurement date as the Court suggested in Mr. Geringer's initial sentencing. *See* June 25, 2015 Hr'g Tr. at 107:4–12 ("I do think that those sums, the Media Tile [sic] amount and any value that DDNi has are more appropriately placed and legally placed in the restitution column"). "The amount of restitution is limited to the victim's *actual losses*." *Id.* (quoting *U.S. v. Bussell*, 504 F.3d 956, 964 (9th Cir. 2007) (emphasis in original)).

The factual record here establishes two matters that are critical to determining restitution. First, a defendant should only be liable for losses that are the actual and proximate cause of the defendant's conduct. *U.S. v. Swor*, 728 F.3d 971, 974 (9th Cir. 2013). Mr. Geringer had nothing to do with the operation of the fund after May 23, 2012 (also the basis of the Court's and parties' acceptance of this date as the measurement date for loss). *SEC v. GLR Capital Management, LLC et al.*, No. 5:12-cv-2663-EJD (N.D. Cal., filed May 24, 2012) ("SEC Case"), ECF No. 8. The Ninth Circuit has held that "restitution is not available for consequential losses, or other losses too remote from the offense of conviction, such as attorney's fees, wages for trial witnesses, or profits from lost corporate opportunities." *U.S. v. Kennedy*, 643 F.3d 1251, 1262 (9th Cir. 2011). Further, restitution is also not available when an "intervening cause" breaks the chain of causation. *U.S. v. Swor*, 728 F.3d at 974. Not only was Mr. Geringer involved in the operation of the Fund from that day forward, but a court-appointed Special Master had been appointed to oversee the assets of the Fund. If the loss the victim's suffered as of May 23, 2012 was $48,810,644.99 (as the parties now agree), then there is no way that Mr. Geringer could or should be responsible for paying restitution for amounts lost after that time.

Second, the victims themselves are only entitled to receive restitution for amounts they lost as a result of the defendant's actions. Again, the facts here establish that as of Mr. Geringer's last involvement, the Fund did have value. Certainly, the MediaTitle cash was owned by the victims and

controlled by the Court. And DDNi's value was also owned by the victims as the Ninth Circuit determined. To the extent DDNi went into bankruptcy in 2017, those losses were not actually or proximately caused by Mr. Geringer. The company had its own management running the company, and the Fund's interest was managed by the Court and the victims themselves. *See SEC Case*, ECF No. 196. For those reasons, the value of the Fund needs to be deducted for a total restitution figure of $48,810,644.99.

**III. The Government Inaccurately Calculates Forfeiture**

The government uses the same calculation for forfeiture, but this too is wrong.[5] Unlike loss, which is calculated for the purposes of the Guidelines, the purpose of forfeiture is to disgorge ill-gotten gains. *See U.S. v. Casey*, 444 F.3d 1071, 1074 (9th Cir. 2006). "[T]he calculation of a forfeiture amount in criminal cases is usually based on the defendant's actual gain." *See U.S. v. Contorinis*, 692 F.3d 136, 146 (2d Cir. 2012). Pursuant to 18 U.S.C. § 981(a)(1)(C), Mr. Geringer must forfeit to the U.S. "any property, real or personal, which constitutes or is derived from proceeds traceable to" the offense of conviction.

Section 981 offers three different definitions of proceeds which apply in different factual scenarios, and lead to different calculations of forfeiture. Proceeds for lawful goods and services provided in an unlawful manner, such as the securities and private company investments in this case, are defined by 18 U.S.C. § 981(a)(2)(B). *See U.S. v. Nacchio*, 573 F.3d at 1062, 1087–90 (10th Cir. 2009); *U.S. v. Contorinis*, 692 F.3d 136 at 145. The government cites *United States v. Holden*, an unpublished case in the District of Oregon, in support of its argument, but that case is distinguishable. In that case the government applied the "unlawful activities" definition of proceeds under § 981(a)(2)(A) because there was no evidence that the defendant had provided goods or services to a

[5] The government also makes the same mathematical error in its own calculation as it did with restitution.

third party. *U.S. v. Holden*, 2016 WL 4191046, at *2 (D. Oregon 2016). In this case, there is no dispute that Mr. Geringer invested the limited partner's money in legitimate companies and real securities. Further, if the government's reading of the two competing definitions of proceeds in § 981(a)(2)(A) and § 981(a)(2)(B) is correct—that any unlawful activity must fall under the former—there would be no need for the latter definition. From a statutory interpretation standpoint, the difference between the two (as discussed in more detail in Defendant's Sentencing Memorandum) is that one involves lawful goods and services and the other involves illegal or unlawful goods and services. As the Court already found, the investments the Fund made were not in sham companies or fake securities—Mr. Geringer invested the money he took in as he said he would, albeit in the wrong places. Therefore, the Court should apply the definition of profits contained in Section 981(a)(2)(B)

Section 981(a)(2)(B) provides a "profits" calculation of forfeiture, requiring an offset for all non-overhead, non-tax "direct costs incurred in providing the goods or services." 18 U.S.C. § 981(a)(2)(B); *see also U.S. v. Santos*, 553 U.S. 507, 511–12 (2008).

Here, the total amount of money invested in the Fund by the limited partners was $87,908,048.37. PSR ¶ 21. The direct costs incurred by the Fund included: (a) $39,343,725.37 in cash distributions paid to investors; (b) $35,000,000 invested in privately-held companies[6]; and (c) $13,300,00 invested in broker accounts. PSR ¶¶ 21–23. Subtracting these direct costs from the money invested in the Fund by the limited partners provides a net proceeds number of $264,323.

## IV. Other Matters

Mr. Geringer has been in custody since September 17, 2015. He should receive credit for time served including all good time credit accrued on whatever sentence the Court imposes at

[6] Note that in the forfeiture context, the proper offset is the direct cost of the Fund's investments in private companies rather than the value of those investments as of the measurement date, i.e. the amount invested in DDNi rather than DDNi's value.

resentencing. Mr. Geringer wishes to remain in Terminal Island to serve the remainder of his sentence. He currently works at the facility and has developed a routine that helps him be a productive member of the facility.

Mr. Geringer would also like the Court to recommend that he be placed in the CODAP program at the Terminal Island facility that he is currently housed in based on the documented mental and emotional health issues he suffered, likely as a result of his time as a competitive football player. *See* PSR ¶ 79. Specifically, a 2007 brain scan conducted by Dr. William C. Klindt showed that Mr. Geringer had: temporal lobe dysfunction with decreased and increased left and right activity; prefrontal cortex dysfunction with decreased left and right activity; and anxiety issues with increased left and right basal ganglia activity. PSR ¶ 79. Mr. Geringer has stated that the anxiety issues documented by Dr. Klindt have also developed into depression based on these matters and issues in his marriage. *Id.* For these reasons, we ask the Court to recommend the CODAP program for Mr. Geringer's mental and emotional rehabilitation.

Respectfully submitted,

VINSON & ELKINS LLP

Dated: April 5, 2019

By: *__/s/ Matthew J. Jacobs__*
Matthew J. Jacobs
Attorneys for Defendant
JOHN GERINGER